focused on generalized statements of uncertainty in the prior art. It excluded specific teachings of what would happen that pointed to reasonable expectations. Now here's the problem. None of the general statements of uncertainty accounted for the specific teachings in Konopleba and Lapido as to how the gold standard, GCSF, worked to mobilize stem cells. And they couldn't have because most of these references were published before Lapido and Konopleba, and the ones that were published contemporaneous with it did not mention those teachings whatsoever. So it was both factual error because the court didn't recognize the teachings of Lapido and Konopleba, but more importantly it was legal error because this court has made clear that it's inappropriate to not consider the specific teachings in prior art and give more credence to generalized teachings of uncertainty. Didn't Lapido say that the science behind stem cell mobilization is poorly understood? And the court relied on that teaching to make a finding of, wow, this is almost a mystery here of how these mechanisms work and there's so many uncertainties and complexities here. We can all have theories and postulations, but there wasn't good grounds in this particular instance to have a level of confidence as to any given theory, at least at this point in time, to what was known. Right. So Lapido is interesting because it went much beyond just having a theory. It provided the in vivo data and the explanation. And the bottom line problem here is these are scientists who are writing science articles. As there was testimony about the district court about this, scientists are looking for absolute certainty, which frankly was another thing the district court looked for. It looked to actually have the mechanism of stem cell mobilization known and resolved. And the district court said there was no reasonable expectation of success because it wasn't resolved fully how to mobilize stem cells. But that's not what's required. What's reasonable probability that there will be success here. So in other words, a reasonable probability that stem cells will be mobilized. So what Lapido did, it sets out in some background saying that there is some uncertainty out there, as all scientists would say, because this is complicated science. Lapido then explained that the gold standard GCSF worked by reducing SDF1 in the in vivo and in vitro data that demonstrated that by using GCSF and using it both in vivo and in vitro. And when you put on top of that, then the teachings of Konopleva, which both echoed that in terms of the in vivo teaching, but then also said that one of skill in the art should seek a blocker of the CXCR4-SDF1 interaction and that that will lead to a stem cell mobilization. So really, I think the court got sidetracked over this issue of there being uncertainty. And also, frankly, just applied the wrong legal standard because this court applies the reasonable probability or the reasonable expectation of success, not certainty, which is what the district court required. The third basis for the court's reasonable expectation finding was its determination that a person of ordinary skill in the art would have believed that you would have wanted to on stem cells. Well, that's the exact opposite of what any person of ordinary skill in the art would have done in light of the prior art. And the district court just made a fundamental clear error here. The prior art uniformly taught, and Lapido is a great example of it, but the prior art uniformly taught that CXCR4 worked to draw stem cells into the bone marrow and it prevented mobilization. So it was just fundamentally wrong and incorrect for the district court to draw the conclusion. There was evidence of other stem cell mobilizers like GCFSF that increased CXCR4 expression, right? So here now we have something else, Plexifor, that was known to, I guess, relatively speaking, decrease CXCR4 expression. So it's not that Plexifor would decrease the expression. Dr. Mody, I'm sorry, was Genzyme's expert, admitted that it doesn't necessarily decrease the expression. What it does is it blocks the interaction between CXCR4, it's what's called the CXCR4 blocker, and it blocks the interaction between that and SDF1. But so the evidence you talked about, about increased CXCR4 levels. So what Lapido found is that when GCFSF was administered, SDF1 in the bone marrow was reduced. And he then looked at, or the Lapido authors looked at the stem cells that were then in the blood and said those stem cells have higher amounts of CXCR4 than they did prior to the administration of GCFSF. And the reason for that, which was explained to the trial court, and there wasn't contrary testimony about this, the reason is that the stem cells essentially are compensating for the reduction in SDF1. And how they compensate for that is they express more CXCR4 because what the cells are doing essentially are looking for the SDF1. And Konopleva then provides a detailed correlation, which the district court looked at and said what that correlation suggests to a person with skill in the art, and this is at appendix page 50, suggests that there's the existence of a causal link between SDF1 and CXCR4 in terms of causing stem cell mobilization. You know, from everything we see, the stem cell science has been the subject of an enormous amount of study and research. But when you go back to the time that this invention was made, until you conducted the experiments, how could you have confidence that it was going to proceed? I think any scientist that makes the effort to do a certain amount of work has an expectation and a hope, or else you'd really be wasting your time. But to say that this was known and predictable, isn't that extremely difficult in this science at that time? So I think before we had LAPIDO and Konopleva, and you know, perhaps the suggestions in Hendrix, which we haven't really talked about, Hendrix is yet another reference that says to use a CXCR4 blocker. In fact, it says use Plerixiforth to mobilize stem cells. Before those publications, I think you're right that things were more unknown. And in fact, when this court dealt with this in the Dr. Reddy's case, the prior case, this court didn't have the benefit of LAPIDO and Konopleva. And this court said that the main piece missing in that case was no in vivo study, which tied the CXCR4-SDF1 interaction to stem cell mobilization. This is a different case now. We have the two studies, Your Honor, that demonstrate why GCSF worked, that demonstrate that the importance of why it worked or the mechanism by which it worked was by getting in the middle of the SDF1-CXCR4 interaction and disrupting that interaction. So again, before those publications, you know, there was much more uncertainty. After those publications, there was a reasonable expectation of success that if you administered something to break that connection, as Konopleva expressly tells you to do... Or at least hope of success, which is quite different from expectation. Well, so I think there's a reasonable probability of success. When you measure what those tests demonstrated and what the experts testified... You're saying they shouldn't have run the experiments? Well, so they did run experiments. And I guess that's maybe what I'm not explaining good enough. LAPIDO and Konopleva both ran experiments to find out why GCSF was working. And what they both concluded in the data with in vivo data and some in vitro data with LAPIDO ads in vitro data is that if you disrupt the SDF1-CXCR4 connection, stem cells are being mobilized. And that's how GCSF worked. So once those studies were published, there was then a reasonable probability of success for a person of skill in the art. And, you know, the bottom line with that, and there's testimony about this in the district court, is it wasn't difficult to mobilize some stem cells. Again, the district court was looking at different things. It was looking at, could we get stem cells that one would know are capable of engraftment? Could we get a certain number of stem cells? Those might be different questions because the patent claims here only require the mobilizing of some stem cells that can be harvested. And Gemsline expert, Dr. Modi, admitted that once those stem cells are in the blood, you can harvest them. And I think, your honors, when you look at the district court's conclusions on motivation and the district court's conclusions when the district court evaluated the inventor's reasonable expectation of success, the findings the district court makes there are totally the opposite of what the district court made with respect to reasonable expectation of a person of ordinary skill in the that it was known in the art that the SDF1-CXCR4 interaction or mechanism is how stem cells were being mobilized, and that there was in vivo testing. As I mentioned, that Hendrix points in that direction. And the district court applied the proper analysis with the inventors because what the district court there said is we shouldn't consider, which is right, you shouldn't consider unclaimed features. If all we look at is a molecule that disrupts the CXCR4-SDF1 interaction to mobilize some stem cells that can be harvested, that was all there. And the district court made that proper conclusion with respect to the inventors, but the district court made the wrong conclusion by importing all these other limitations when the district court was addressing the person of ordinary skill in the art. I'd like to quickly just turn to some of the secondary considerations. First and foremost, the district court was looking at the wrong, closest prior art. The district court held that GCSF alone was the closest prior art and made all of its findings based on that. You know, that really ignores and frankly is illogical because ConalPLEVA discloses the administration of GCSF. It then discloses in vivo data about how GCSF work and then has the express suggestion to find another CXCR4-SDF1 blocker to allow more stem cells to be mobilized. And when you start looking at the secondary considerations in light of ConalPLEVA, they certainly carry less weight. Again, on the failure of others, the district court was looking to unclaim features, including clinical success relative to GCSF, whereas the evidence demonstrated that there were numerous prior molecules that are out there that when administered would mobilize stem cells, but the district court ignores those. And frankly, it's just improper to rewrite the claims here to something more narrow in order to state them. And then finally, on long-felt need and failure of others, the district court appropriately found that there was a blocking patent, but then did the wrong analysis when looking at that blocking patent. There was a patent that clearly blocked others, as Dr. Andreev testified, from using CXCR4, but the district court flipped the blocking patent analysis that this court is using, according to other cases, on its head and said it was speculative that others would have come up with the invention but for the blocking patent. But that's not the analysis. This court's analysis is applied that if there is a blocking patent, then it's speculative that a long-felt need or failure of others is due to any other reason other than the blocking patent. And then finally, on the Andreev letter, the Andreev letter is clear evidence of simultaneous invention. Again, I think the district court made multiple mistakes of fact when evaluating the Andreev letter. It also inappropriate applied an intent element. And it's either an anticipatory reference or it's certainly simultaneous invention, which again, weighs in light of the obviousness of the claims. So if there are no further questions, I'll reserve my time. Thank you. Mr. Berghoff. Good morning, Your Honors. May it please the court. You can affirm here, based solely on the issue of reasonable expectation of success, and I'll start there. I want to clarify a point made by counsel. The district court here made numerous findings concerning the absence of a reasonable expectation of success. What about the ground of no reasonable expectation of success because there is no reasonable expectation of successful stem cell engraftment? That's going beyond the scope of the claim, is it not? Engraftment is not in the claims, Your Honor. That is correct. All we're talking about here is mobilization of stem cells into the blood. That's correct. And the district court made a specific finding on the lack of reasonable expectation of success without any reference to engraftability of the stem cells. If I could refer, Your Honor, to the appendix, page 76, paragraph 112. This is one of several findings, factual findings by the district court on reasonable expectation of success. And the court said it should not be lost on those of us looking back, if I can say in hindsight, to September 2000. The person of ordinary skill of the art would not have had a reasonable expectation that use of Polyoxephora as a stem cell mobilizer would succeed. Again, this is actually repeating another similar finding at appendix 6263. So you're not defending the no expectation of engraftment ground of no reasonable expectation of success? You prefer to focus on other grounds of no reasonable expectation of success articulated by the judge? I would like to do both. And if I could... Okay, well how about the one that... Engraftment first, and then we'll come back to this point. Engraftment is an implicit part of the claims. Institute Pasteur says when the motivation of the person of ordinary skill in the art looking at the prior art is focused on a particular goal, and the court here found that the motivating force of the person of skill in the art was to find a better stem cell mobilizing agent than GCSF. And with that goal in mind, Institute Pasteur says when you come to the no reasonable expectation of success analysis, you can't then lower the goal to something other than what the person of skill in the art was looking at. And engraftability, there's no point in mobilizing and certainly no point in harvesting stem cells that won't engraft. They're not viable. So are you saying your claims are limited to the method of not only mobilizing stem cells, but also engrafting stem cells? No, they're not. They are not. That is an implicit... But you're saying it's an implicit limitation in the claim. It would be implicitly understood by the person of skill in the art reading the claim that the whole goal of stem cell mobilization is to mobilize and harvest stem cells that will engraft. That's the goal. That was the motivation for all the research, and that would be understood to be implicit. And according to Institute Pasteur, when you get to a reasonable expectation of success, you don't then lower the bar to something less than... You don't lower the bar to the actual claim limitations. That's what you're saying. It's implicit in the claim. Implicit in the claim, but it's not a claim limitation. It is not. You're not requiring an accused infringer to actually successfully engraft stem cells to infringe your claim. Correct. Your claim doesn't require it. That's correct, Your Honor. But nevertheless, you have to prove it has a reasonable expectation of success, this non-claimed limitation. No. And the district court made several findings that did not refer to engraftment and yet found no reasonable expectation of success. And if I could return to appendix page 76 of the district court's opinion, found that based on the uncertainties regarding the mechanisms of stem cell mobilization, and the including Zaitis' expert, viewed the mechanisms and molecules involved in stem cell mobilization as extremely complex and uncertain, the known complexity in the art, and the fact that GCSF, SCSF, and IL-6 were known stem cell mobilizers that increased CXCR4 expression. Even if a person of ordinary skill in the art had given Clalixifor a try, that doesn't mean that such a person could at that time have reasonably expected it would succeed in mobilizing stem cells. No reference to engraftment, just the reference to whether Clalixifor would mobilize stem cells or not. And that is without question the key claimed feature of the asserted claims. And since the person of ordinary skill in the art, as found factually by the district court, would not have had a reasonable expectation based on the uncertainty in the art, and based on the fact that known stem cell mobilizers increased CXCR4 expression such that one wouldn't jump to the conclusion that you should go the other way. In fact, that would lower your expectation of success. Based on those factual findings alone, the district court found no reasonable expectation of success. And again, reach that same conclusion just so the record is complete at appendix pages 62 and 63. There was an abundance of riches here, your honors, on why there was no reasonable expectation of success. The district court also referred to the lack of engraftability. Pretty strong motivation to combine them, right? I mean, reading through Judge Jordan's motivation analysis, it practically convinced me that the claims were obvious in light of everything that was going on with, you know, Hendricks and the new references that relied upon here compared to Dr. Reddy's case. But the law, I think, of this court is clear that motivation to combine does not mean there's a reasonable expectation of success. And I believe it's intelligent biosystems said you can't conflate those two standards. A perfect example is this court's decision in the regents of the University of California versus the Broad Institute on the CAS 9, where the court found a strong motivation to combine and yet also found that there was no reasonable expectation of success. Here, the finding on the motivation to combine is, I think I can characterize it fairly as weak, because the judge found that the person of skill in the art, based on all of the uncertainties and the pointing away in the prior art, might give because of the desperate need for a better stem cell mobilizer, but would do so despite potential misgivings, despite not thinking it would necessarily work. And so the two issues are not the same. And we do not, we are not challenging the district court's finding on motivation to combine. But it's certainly in this factual record does not lead to a finding of no expectation of success. And the district court made that factual finding. In turn, the district court's decision was also supported by a number of unexpected results. I'll just focus on two. One is that the use of Cloroxifor to mobilize stem cells results in, unexpectedly, superior stem cells. So when you practice the invention, when you use Cloroxifor to mobilize stem cells, they're better, they are superior to the ones that you got with the prior art. That was unexpected as found by the judge, by the district court, excuse me. Secondly, the district court found it was unexpected that when you practice the claimed method, when you administer Cloroxifor, it mobilizes stem cells rapidly and predictably. The prior art, it might take five, seven days of daily GCSF injections for a patient to mobilize enough stem cells. But Cloroxifor, it happens overnight. Why isn't Conoplaiva the closest prior art? Conoplaiva is also describing a methodology of mobilizing stem cells using, in part, GCSF. So why wasn't that regarded as the closest prior art? The, Zaitis is making the same arguments that they made in their post-trial briefs on Conoplaiva being the closest prior art to your honors, but they had no evidence to support it. Both of the experts agreed that the gold standard was GCSF. That's what everybody viewed as what needed to be improved upon by the persons of skill in the art doing research in this area. And Dr. Modi, our expert, testified that based on that, GCSF was the closest prior art. And there was, as a district court found, there was no evidence to the contrary put in by Zaitis. So it's just a lack of if that was their goal. They failed to prove that Conoplaiva was the closest prior art. And then even in the post-trial briefing, they were referring to different references as the closest prior art based on what aspect of the claims they were dealing with. And that's improper under this court's case law. If there are no more questions from the panel, but I'm happy to hear. Another one. What about the notion of a blocking patent when it comes to secondary consideration evidence? And in this particular instance, the judge said, well, you need to have actual hard evidence that there were scientists out there that wanted to use the patented compound, but were effectively blocked from using it and experimenting with it by the patent owner in order to say that, well, the existence of the blocking patent kind of neutralizes any secondary consideration evidence. But our case law doesn't seem to really talk in those terms. The other side makes a point that the existence of a blocking patent presumptively neutralizes secondary consideration evidence, unless the patent owner explains the contrary. I think Accorda, the en banc decision by this court, finds that whether a patent block, a blocking patent, has any effect on the non-obviousness issue is very fact specific. And especially, you need to look in the particular facts of the case in order to decide the magnitude of the diminution, I believe is a direct quote from the decision, magnitude of the diminution of the effect of the blocking patent on one felt need, failure of others, whatever. There was just a complete absence on Zaitis' part of any direct testimony concerning the effect of the blocking patent. I thought they had one witness say they wanted to use Plexifor, but they were denied access to it by the patent owner. That is correct, but he never referred, he never said, and the reason was they had a patent on it. There was no testimony, no testimony linking anybody's lack of access to Plexifor or lack of ability to test other CXCR4 blockers, of which there are many, to test the hypothesis that blocking CXCR4 was going to mobilize stem cells. And that testimony does not establish a connection to the prior patents owned by Genzyme. And you compare that to the testimony in the Accorda case where the accused infringer put on an economics expert who testified in detail about how the blocking patents in that case actually blocked people from doing the research necessary. No such testimony in this case. So I don't think, especially it's such a fact-specific inquiry as held by this court in the past, I don't think there's any merits burden of proof on that issue. Thank you. Mr. Langevin. Thank you, Your Honor. I just have a few quick points, and I'll start with the blocking patent question and analysis. There was clear testimony by Dr. Andreev that he couldn't get access to Plexifor, a letter he sent in his testimony, and he said because Genzyme was the only source of it. There was also a demonstration that the patent covered Plexifor. And the district court essentially found that it was a blocking patent, it just did the wrong legal analysis. So based on Accorda and based on all the factual inquiry that Accorda says, all the factual basis was there, and the district court essentially concluded that it was a blocking patent, just did the wrong legal analysis. Just quickly, I want to address the point about the district court's various reasons of why it didn't found reasonable expectation of success. It is pure speculation to know how the district court would come out if the legal error it committed with respect to requiring engraftment was reversed. And in fact, if I can point the court to Appendix 104 and 105, paragraph 41, the district court says that it made a threefold determination, and one of those determinations was the engraftment requirement. So it's pure speculation that the district court would still find there to be no reasonable expectation of success. In fact, I posit as I did when I spoke before, that all the evidence the court found with respect to motivation and the evidence it found with respect to the inventor's reasonable expectation of success support a reasonable expectation for a person of ordinary skill here. Unless you have any other questions, I thank you for your time. Thank you. Thank you both. That concludes this morning's afternoon's arguments of this panel. All rise.